[No. 14117. Department Two. August 29, 1917.]

C. R. SCHWEITZER, *Respondent*, v. EQUITABLE SAVINGS & LOAN ASSOCIATION, *Appellant*, H. G. IMMEL *et al.*, *Defendants*, BUILDERS SUPPLY COMPANY, *Respondent.*[1]

MORTGAGES—LIEN AND PRIORITY—FUTURE ADVANCES — MECHANICS' LIENS—ESTOPPEL. Where the agent of the mortgagee in a mortgage given for future advances informed contractors that he had the money in his possession to pay for the work and that they would be paid, the mortgagee is estopped to assert a lien prior to the contractors' mechanics' liens, as it is bound by the representations of its agent disbursing the money.

APPEAL—REVIEW—PLEADINGS—AMENDMENTS. In an equity case, upon a trial *de novo* on appeal, insufficiency of the complaint is immaterial, as it will be deemed amended to conform to the proofs.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered December 2, 1916, in favor of the plaintiff and intervener, in an action to foreclose mechanics' liens, tried to the court. Affirmed.

[1]Reported in 167 Pac. 111.

*S. A. Bostwick* and *W. H. Mason,* for appellant.

*John Sandidge,* for respondent Schweitzer.

*Swale & Swale,* for respondent Builders Supply Company.

MOUNT, J.—This action was brought by respondent Schweitzer to foreclose a lien claim upon certain lots in the city of Everett. These lots were owned by the defendants Immel and wife, who had theretofore executed a mortgage to the Equitable Savings & Loan Association thereon to secure the sum of $2,000 loaned by the association to Immel and wife. The Equitable Savings & Loan Association was made a party defendant. Immel and wife defaulted, and a judgment of default was entered against them. The Equitable Savings & Loan Association filed an answer, claiming that its mortgage was prior to the liens. After the action was begun, the Builders Supply Company was permitted to intervene. This company claimed a lien prior to the mortgage, upon the same ground that the respondent Schweitzer claimed, namely, that the mortgagee was estopped to claim its mortgage prior to the lien claims, because, at the time the contracts were entered into by Schweitzer and the supply company with the defendant Immel and wife, the agent of the mortgage company stated to them that he had funds in his hands arising from the mortgage, which funds were in his possession; that he had sufficient to pay their bills; and that the bills would be paid; and, relying upon the promise, Schweitzer and the supply company furnished materials and did work for which the liens are claimed. Upon the trial of these issues, the court entered a judgment estopping and enjoining the loan association from asserting the lien of its mortgage prior to the liens claimed by the respondents. The Equitable Savings & Loan Association has appealed from that order.

The facts are briefly as follows: On June 29, 1915, Immel and wife borrowed $2,000 from the Equitable Savings & Loan Association, and to secure the payment of this money, exe-

cuted and delivered to the loan association a mortgage upon the lots, which were vacant and unimproved at that time. The mortgage was recorded on July 24, 1915. It contained a clause as follows:

"The mortgagors agree to pay, when due, all taxes and assessments levied upon said premises; to keep the same free from all encumbrances, including those of record, whether legal or otherwise; to complete all buildings in course of construction or about to be constructed thereon within six months from date hereof; to keep all buildings in good repair and continuously insured in a sum not less than the original principal herein named; all policies of insurance with mortgage clause in favor of mortgagee attached to be delivered to mortgagee and to be in companies named by it; should the mortgagors fail to keep any of the foregoing covenants, then the mortgagee may at its option carry out the same and all its expenditures therefor shall draw interest until repaid at the rate of ten per cent per annum, to be repayable by the mortgagors on demand, and shall be secured by this mortgage."

At the time this mortgage was made, the mortgagors contemplated the erection of a building upon the lots. When the mortgage was made, a draft for the amount of the mortgage was sent to R. M. Mitchell & Son, of Everett, who were the agents of the loan association which made the loan. This draft was indorsed by the mortgagors and deposited to the credit of R. M. Mitchell & Son, to be paid out upon orders of the mortgagors in the construction of the building to be erected. On or about the 27th day of November, 1915, the respondent Schweitzer entered into an agreement with Immel and wife to furnish plumbing for the building. The contract price of this work was $250. Before entering upon the work, Mr. Schweitzer, in company with Mr. Immel, went to Mr. Mitchell, the agent of the loan association, and was informed by Mr. Mitchell that he had the money in his possession to pay for the work, and that Mr. Schweitzer might go ahead and do it, but when the work was completed Mr. Mitchell refused to pay for it, stating, in substance, that all the money

had been paid out. Thereupon, Mr. Schweitzer filed a claim of lien against the building and seeks to foreclose it in this action. The same state of facts is the basis of the claim of the Builders Supply Company.

The principal contention of the appellant is that its mortgage, under the statute, is a prior lien, and that the lien claims of the respondents are inferior to the mortgage. This court has held in a number of cases that, under Rem. Code, § 1132, a mortgage of record is constructive notice and is prior to a claim of lien for work done subsequent to the recording of the mortgage. *Cutler v. Keller*, 88 Wash. 334, 153 Pac. 15, L. R. A. 1917C 1116, and cases there cited.

In that case we said, at page 339:

"The language of this section carries the necessary implication that the lien accorded to mechanics and materialmen is subject to the lien of a prior mortgage on the real estate recorded prior to the commencement of the performance of the labor or the furnishing of the material, or of which the lien claimant had notice."

But that rule is inapplicable to the facts in this case, because it is very clearly proven that the work was done because of the representation of the agent of the appellant that he had money in his possession to pay these particular claims and that he would pay them as soon as the work was done. Mr. Schweitzer, in testifying to this point, stated that he went to see Mr. Mitchell in regard to whether he had the money, and also whether he had the mortgage, and was told that he had the mortgage. The witness then said:

"I spoke to Mr. Mitchell in regard to the heating. He said they were figuring on a hot-water heating plant and he didn't think the money was in there for a hot-water heating plant. He wanted to know the difference, and I told him that the hot air heating plant would come to somewhere about one hundred and seventy-five dollars. I told him I hadn't figured the heating yet but I would figure it and see, that I didn't think it would come to very much more than that. . . . I went up with him (Immel) to Mr. Mitchell's office

and they figured there in regards to the heating; figured out to see how much money there was in that, and they said all right. . . . I asked him (Mr. Mitchell) when I got that (the $200 paid him) whether they had the money to finish the job on. He said 'Yes, sir, it is all right; go ahead and finish it; you will get your money when it is done.' . . . Q. And you expected that there would be sufficient money coming to Immel out of the mortgage to pay your bills? A. Well, Mr. Mitchell told me that there would be; that the money was there; that he had the money right there to pay me with the minute I was through, or I wouldn't never have started to work."

The evidence also conclusively shows that Mr. Mitchell was the agent of the appellant and had the money obtained upon the mortgage in his possession, and was disbursing the money to construct the building.

Upon this state of facts, we are satisfied that the appellant is estopped to say that its mortgage is ahead of these lien claimants, who furnished materials and did work under an assurance from Mr. Mitchell that he had the money and would pay for the work as soon as it was done.

"The measure of the operation of an estoppel is the extent of the representation made by one party and acted upon by the other. The estoppel is commensurate with the thing represented, and operates to put the party entitled to its benefit in the same position as if the thing represented were true." Pomeroy's Equity Jurisprudence (Students' Edition), 1907, § 813, page 398.

"Estoppel by misrepresentation, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy." 16 Cyc., page 722.

Under these rules, the loan association is estopped to claim its mortgage prior to these lien claims, because the agent of

the association, who had the money in his possession, represented to these lien claimants that he had the money in his possession, and told them to go·ahead and do the work and he would see that they were paid as soon as the work was done.   Of course, the loan association is bound by these declarations of its agent.   These respondents, upon that assurance, furnished the labor and material, and are clearly entitled to their pay ahead of the mortgage.   In 10 R. C. L. at page 804, it is said:

"So, a mortgagee who has withheld money in breach of his promise to advance the full amount of a loan made expressly for the erection of buildings by the mortgagor, is estopped as against laborers and materialmen who have acted in reliance on his representations that the money would be advanced to the mortgagor; and so also where the holder of a mortgage invites expenditure and asserts that the person advancing the money shall be protected."

In the case of *Shaw v. Spencer*, 57 Wash. 587, 107 Pac. 383, where a lessee had made improvements upon the lessor's property, this court held that, while a lessor's estate is not ordinarily subject to liens for improvements made on demised premises by the lessee during his term, yet where the lessor knew that the labor was being performed and material furnished, and knew that the lessee was unable to meet the bills, and where the lessor gave orders and paid bills necessary to retain laborers, assuring them that their bills would be paid when they threatened to quit, the lessor was liable.

That ruling, of course, was based upon the rule of estoppel.   We are satisfied, for these reasons, that the trial court properly entered a decree adjudging these two liens prior to the mortgage.

An argument is made in the brief that the complaint fails to state a cause of action.   Whether the allegations of the complaint in themselves are insufficient we need not now determine, because the case is tried here *de novo* and we will consider the complaint amended to conform to the proven

facts.   What we have said above is sufficient to show that the respondents' lien claims are prior to the mortgage.   It is unnecessary to consider other points discussed in the briefs.

The judgment of the trial court is affirmed.

ELLIS, C. J., HOLCOMB, FULLERTON, and PARKER, JJ., concur.